IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**DONALD E. NEWBERRY**,

               Plaintiff                         Civil No. 09-648-ST

              v.                            **OPINION AND ORDER**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

               Defendant.


STEWART, Magistrate Judge:

Plaintiff, Donald Newberry ("Newberry"), seeks judicial review of the Social Security

Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("Act"). This court has jurisdiction under 42 USC §§ 405(g) and 1383(c). All parties have

consented to entry of final judgment by a Magistrate Judge in accordance with FRCP 73 and

28 USC § 636(c).  For the following reasons, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Newberry was 46 years old on his alleged onset date (Tr. 294)[1], and completed one year

of college.  Tr. 66.  He alleges disability due to depression, hepatitis C, chronic obstructive

pulmonary disease ("COPD"), asthma, emphysema, back pain, and carpal tunnel syndrome.

Tr. 60.  Newberry's previous work was in heavy construction and labor.  Tr. 61.  He has been

homeless for much of the period under review.

After the Commissioner denied Newberry's applications initially and upon

reconsideration, an Administrative Law Judge ("ALJ") held a hearing on November 8, 2006.

Tr. 248-79, 398-424.  The ALJ found Newberry not disabled on February 23, 2007.  Tr. 12-26.

Newberry appealed to this court which remanded the case on December 27, 2007, for further

proceedings.  Tr. 301-02.  This court explicitly declined to affirm any "specific aspect" of the

ALJ's February 2007 decision.  Tr. 301.  The Appeals Council subsequently vacated the ALJ's

decision and remanded the matter back to the ALJ with instructions to allow Newberry to submit

additional arguments, clarify Newberry's RFC, including his environmental restrictions, and

obtain supplemental evidence from a vocational expert ("VE").  Tr. 306-07.

The ALJ held a second hearing on December 18, 2008 (Tr. 477-92), and issued a second

decision on February 20, 2009.  Tr. 288-96.  The ALJ found Newberry disabled as of July 17,

2008, when he turned age 55, but not before that date.  Tr. 296.  Newberry appeals the ALJ's

---

[1]  Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on April 6, 2010 (docket #15).

finding that he was not disabled between his December 15, 1999 onset date and July 17, 2008.

## BACKGROUND

### I.    Medical Record

The medical record begins in 1993 and closes in 2007.

Newberry received a nerve conduction study showing bilateral carpal tunnel syndrome on January 20, 1993. Tr. 245. Newberry testified at his November 8, 2006 hearing that he had left-hand surgery in 1996 or 1997, and never had surgery on his right hand. Tr. 276, 421. Disability Determination Services ("DDS") and the ALJ's February 23, 2007 decision found that Newberry had surgery for this condition on his right hand in 1994. Tr. 18, 165.[2] However, the medical reports of this surgery are not in the record.

In July 2001, treating physician Robert E. Guild, M.D., diagnosed depression, lower back pain, alcoholisim, and "smoking syndrome." Tr. 146.

Newberry received emergency room treatment in November 2001 following exposure to tuberculosis. Tr. 130-34. No infection was diagnosed, and he was instructed to stop smoking and drinking. Tr. 131. Newberry also received treatment for a twisted ankle in January 2002. Tr. 144. In February 2002, Newberry complained of a cough which was thought to be rhinitis. Tr. 152.

An X-ray in September 2002 showed a healed clavicle fracture. Tr. 150. On December 30, 2002, Newberry was admitted to the emergency room for chest pain following a street fight. Tr. 125. No fracture was found. *Id.* He continued to complain of pain relating to

---

[2]    The ALJ's February 23, 2007 decision also inconsistently stated, without any citation to the record but presumably based on Newberry's testimony, that Newberry "had surgery on his left hand in the 1990's and was supposed to have surgery on the right hand." Tr. 25.

this incident in January 2003.  Tr. 139.

Newberry complained of right-side chest pain on August 20, 2003, and was diagnosed with costochondritis.[3]  Tr. 234.  Newberry complained of lung congestion in November 2003, and was diagnosed with COPD and possible pneumonia, noting a previous emphysema diagnosis.  Tr. 161-63.  According to the medical notes, Newberry had been asked to leave the Mission housing shelter due to alcohol use.  *Id.*

In April 2004 Newberry fell off his bicycle and broke his left hand in April 2004. Tr. 229, 231.

On October 21, 2004, examining physician Peter Verhey, M.D., evaluated Newberry for DDS.  Dr. Verhey diagnosed hepatis C and arthritis, but assessed no work-related limitations. Tr. 169-72.

On June 30, 2005, Newberry had another bicycle accident in which he fractured his left hip.  Tr. 196-209.  The emergency room physicians diagnosed him with COPD, hepatitis C, alcoholism, and tuberculosis by history.  Tr. 203.  Newberry received corrective surgery for his hip fracture (Tr. 200) and was discharged on July 5, 2005, with instructions to pursue physical and occupational therapy.  Tr. 197-98.  He received follow-up treatment through November 2005.  Tr. 220-24.

Newberry received regular treatment for COPD and bronchitis between May 2005 and January 2006.  Tr. 238-42.  On December 6, 2005, Newberry complained of daytime sleepiness to Larry Hirons, M.D., who was uncertain of its cause.  Tr. 218.

---

[3]  Costochondritis is inflamation of the cartilage junction between the upper ribs and sternum.  *See* Web MD, "Costochondritis," *available at*: http://www.webmd.com/pain-management/costochondritis (last visited February 7, 2011).

4 - OPINION AND ORDER

Treating physician Steven Yoder, M.D., performed a physical exam on April 17, 2007, and noted Newberry's reports of a  daily cough and possible shortness of breath with walking. Tr. 439-40.  Dr. Yoder diagnosed chronic bronchitis and hepatitis C.  Tr. 440.  On May 8, 2007, Dr. Yoder noted laboratory results showing some liver inflamation.  Tr. 430.

II.    **Newberry's Testimony**

   A.    **DDS Forms**

Newberry completed numerous forms responding to the Commissioner's inquiries regarding his pain, fatigue, and activities of daily living.  On August 28, 2004, Newberry stated that he has been fatigued since 1995, naps twice daily, and can walk one mile.  Tr. 89-90.  He has constant pain in his legs, back, hips, knees and feet.  Tr. 93.  Ibuprofen improves the pain, but causes "stomach burn."  Tr. 93-94.

In connection with his initial appeal on November 30, 2004, Newberry reported increased stiffness, loss of movement, and pain in his neck and shoulders.  Tr. 105.  He also stated that his depression and associated poor hygiene affected his appearance and that he suffered fatigue due to hepatitis C, cognitive troubles and difficulty with this hands.  Tr. 109.  On January 26, 2005, Newberry reported that his condition was the "same" and added that his hands hurt due to carpal tunnel syndrome.  Tr. 113.

In October 30, 2007, Newberry again reported constant pain in his knees, hips, back, shoulders, neck, and hands, which improves with ibuprofen and good sleep.  Tr. 380.  He also reported napping two to three hours per day, an ability to walk one mile, and few daily activities. Tr. 376-77.

///

5 - OPINION AND ORDER

B.     **Hearing Testimony**

1.     **November 8, 2006 Hearing**

Newberry explained that after fracturing his hip, riding a bicycle was easier for him than walking.  Tr. 402, 412.  Since this injury, he wears a lift in his left shoe and cannot comfortably sit or stand for any length of time.  Tr. 402-03.  Specifically, he can sit for 15 minutes and stand for a half hour or one hour.  Tr. 403.  Newberry also stated that he has difficulty sleeping and is additionally fatigued due to his hepatitis C condition.  Tr. 403-05.

Newberry described asthma symptoms which occur both day and night and are exacerbated by walking.  Tr. 404.  He uses an inhaler for his asthma.  Tr. 404, 413.  He was diagnosed with depression 12 or 15 years ago, but ceased using prescribed medication due to sexual dysfunction.  Tr. 406.  He described his current depression symptoms as "lethargy" and does not like being in crowds.  *Id.*

Newberry also suffers arthritis in his knees and back which is spreading to his neck, shoulders, and hips.  Tr. 407.  He cannot raise his arms above shoulder height due to a past broken collarbone.  Tr. 408.

Newberry also explained that he completed one and a half years of community college course work in auto repair, did heavy labor in the past, and lived at the Mission shelter.  Tr. 409-10.  He had not had a drink in three or four days and was "not supposed" to drink at the Mission shelter.  Tr. 410.

2.     **December 18, 2008 Hearing**

Newberry's testimony at his remand hearing on December 18, 2008, was limited to describing the manner in which his condition had changed since his first hearing.  Tr. 480-83.

6 - OPINION AND ORDER

Newberry testified that his liver enzymes "are getting more abnormal," that he has difficulty

sleeping, and that his hands "are about the same as they were." Tr. 480-81. He again testified

that his arthritis was spreading into his neck and knees, but that his depression was improved.

Tr. 481, 483. He sleeps outside and works as an unpaid night watchman in exchange for

electricity usage. Tr. 481.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

steps in determining disability under the meaning of the Act. 20 CFR §§ 404.1520, 416.920;

*Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step

two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve month duration requirement. 20 CFR §§ 404.1509,

404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe

impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an

impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the

impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The

claimant's RFC is an assessment of work-related activities the claimant may still perform on a

regular and continuing basis, despite limitations imposed by his impairments. 20 CFR

7 - OPINION AND ORDER

§§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four.  20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can perform his past relevant work, he is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f).  If the claimant cannot perform such work, he is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 CFR §§ 405.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The ALJ's February 20, 2009 decision incorporated the medical evidence discussed in the the prior February 23, 2007 decision.  Tr. 291.  At step two, the ALJ found that Newberry's COPD, asthma, post-hip surgery status, hepatitis C, and alcohol abuse are "severe" impairments, but that his alleged mental impairments are non-severe.  *Id.*  The ALJ found that these

impairments did not equal a "listed" disorder at step three and that Newberry retained the RFC to perform light work with a sit and stand option, a change of position every 30 minutes, and avoidance of concentrated exposure to dusts, chemicals and fumes.  *Id.*

At step four, the ALJ found Newberry unable to perform his past relevant work.  Tr. 293. The ALJ noted that on July 17, 2008, Newberry's age category changed from "younger" to "advanced" age.  Tr. 294.  The ALJ found that the medical-vocational guidelines and the VE's testimony directed a finding of not disabled before July 17, 2008, but a finding of disabled after that date due to his change in age.  Tr. 294-95.  Finally, the ALJ found that Newberry's substance abuse was not a contributing factor material to the disability determination.  *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."  *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009), quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id*; *see also Batson*, 359 F3d at 1193.

## DISCUSSION

Newberry challenges the ALJ's credibility determination and asserts that the ALJ should have developed the record. Newberry also asserts that the ALJ erred in assessing his RFC and finding him not disabled before July 17, 2008.

## I.   Newberry's Credibility

Newberry asserts that the ALJ failed to address his testimony at the first hearing and improperly addressed his testimony at the remand hearing

### A.   Legal Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 CFR §§ 404.1529(a), 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F3d at 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ

may additionally employ ordinary techniques of credibility evaluation, such as weighing

inconsistent statements regarding symptoms by the claimant. *Id.*  The ALJ may not, however,

make a negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883.

B.    **Credibility Findings at First Hearing**

The ALJ's February 23, 2007 decision found that the record did not "provide objective

support for the degree of limitations" alleged by Newberry. Tr. 23.  As support, the ALJ cited

contradictions with the medical record, Newberry's daily activities, his ability to sit for the length

of the hearing, and the lack of any assessment of functional limitations by any treating source.

Tr. 23-24.  Although not expressly stated, by rejecting Newberry's testimony concerning the

severity of his symptoms, the ALJ did not find Newberry entirely credible.  This court neither

affirmed nor reversed that finding in its December 27, 2007 remand order.  Tr. 301.  The Appeals

Council subsequently vacated the ALJ's February 23, 2007, decision.  Tr. 306.  Because it was

vacated, the ALJ's February 23, 2007 decision does not represent a final decision by the

Commissioner reviewable by this court.  42 USC § 405(g).

The Commissioner asserts that the ALJ's February 20, 2009 decision adopted the

credibility finding made in the February 23, 2007 decision.  However, the ALJ only

"incorporated by reference" the "medical evidence outlined" in the prior decision.  Tr. 291.

Although the ALJ did not specifically incorporate the earlier credibility findings, he did state that

in making the RFC determination, he "considered all symptoms and the extent to which these

symptoms can reasonable be accepted as consistent with the objective medical evidence and

other evidence, based on the requirement of 20 CFR [§§] 404.1529 and 416.929 and SSRs 96-4p

and 96-7-p." Tr. 291. Those cited requirements relate to the analysis of subjective complaints. In addition, the ALJ also stated that "[a]fter a review of the full record and testimony, the undersigned finds that the previous [ALJ] decision was well-reasoned and arrived at the correct conclusion that [Newberry] retained the ability to sustain other work at the competitive level in the national economy." Tr. 292. The ALJ could not have reached that conclusion without considering the prior decision rejecting Newberry's subjective complaints.

Admittedly, the ALJ could have been clearer, especially since he also stated that his "decision deals specifically with the Appeals Council's remand order[]" which was more limited in scope than this court's remand order. Tr. 291. Nevertheless, a thorough reading of the ALJ's second decision leads to only one reasonable conclusion, namely, that it made the same findings regarding Newberry's credibility as did the first decision.

Although Newberry does not specifically challenge the credibility finding in the first decision, a review of the record reveals that it is supported by substantial evidence in the record.

C.    **Credibility Findings at Remand Hearing**

The ALJ's February 20, 2009 decision found Newberry's testimony that his impairments worsened between his two hearings to be inconsistent with the medical record. Tr. 292.

Newberry testified at the remand hearing on December 17, 2008, that his condition was "progressing" and "deteriorating." Tr. 480. When asked to explain, he stated that his liver enzymes were becoming "more abnormal" and that he subsequently was more fatigued, took more naps, and had increased difficulty sleeping. Tr. 480-81. He also stated that his hands were "about the same" and that his hip is "better than it used to be." Tr. 481. His arthritis was "spreading" to his neck and knees, but was otherwise "pretty much the same," and his depression

was improved with a change in his living situation.  Tr. 481, 483.

The ALJ correctly noted that the medical record did not show that Newberry received treatment for increased pain in his neck and knees.  Tr. 292.  The ALJ also cited Newberry's continued smoking in finding his testimony regarding his worsening COPD not credible.  Tr. 292.  Such a citation is appropriate.  *Bray*, 554 F3d at 1227.

However, the ALJ's findings regarding a change in Newberry's liver studies is not supported by the record.  The ALJ cites Exhibit 21F which contains blood tests ordered by treating physician Dr. Yoder on April 29, 2008, but does not cite any previous study for comparison.  Tr. 292.  Further, Dr. Yoder noted some liver inflamation on May 8, 2007.  Tr. 430.  Because the ALJ failed to accurately point to any liver function test comparison, his finding that the medical record contradicts Newberry's testimony regarding his liver function is not based upon the record.

Despite this error concerning the liver studies, Newberry fails to establish that his liver studies, as reflected by the record, worsened or that those studies caused increased work-related limitations.  Newberry bears the burden of showing both.  20 CFR § 404.1512, 416.912; *Tackett*, 180 F3d at 1099.  Thus, the ALJ appropriately found that the medical record did not support his allegation that the symptoms regarding Newberry's liver functions worsened between the first and second hearings.

## II.    The ALJ's Duty to Develop the Record

Newberry asserts that the ALJ failed in his duty to develop the record regarding his hip fracture, bilateral carpal tunnel syndrome, and breathing impairments.

///

### A.    Legal Standards

The claimant must provide evidence relating to his impairments and their severity. 20 CFR §§ 404.1512(a) & (c), 416.912(a) & (c).  However, the ALJ has a duty to develop the record when the claimant's onset date is ambiguous, *Armstrong v. Comm'r*, 160 F3d 587, 590 (9th Cir 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination.  20 CFR §§ 404.1513(e), 416.913(e); *Bayliss v. Barnhart*, 427 F3d 1211, 1217 (9th Cir 2005).

### B.    Analysis

#### 1.    January 2005 Hip Fracture

At the December 31, 2004 examination, Dr. Verhey noted that Newberry complained of arthritis in his hips, but assigned no work-related restrictions as a result.  Tr. 169-72.  Six months later, Newberry fractured his hip and underwent corrective surgery on June 30, 3005.  Tr. 200-12. Physicians continued to follow this injury through November 2005.  Tr. 221, 222, 224.  On September 22, 2005, Thomas Hasbach, M.D., prescribed physical therapy, noting that Newberry had "markedly weak" abductor muscles.  Tr. 221.  However, by November 3, 2005, he was "doing very nicely" and had "good side-lying abduction strength."  Tr. 220.  After this date, the medical record is silent regarding this hip impairment.

The ALJ found Newberry's hip impairment "severe" at step two and accounted for it in Newberry's RFC by allowing a sit and stand option with the ability to change positions.  Tr. 291. Newberry now relies upon his own testimony that his hip impairment causes further limitations. However, he fails to point to any evidence the ALJ should have obtained regarding his hip impairment, and the medical record regarding this impairment is confined to the June 30, 2005

14 - OPINION AND ORDER

hip fracture and corrective surgery and approximately four months of follow-up care.  Newberry has not demonstrated that further development of the medical record regarding this impairment would be productive.

### 2.    Bilateral Carpal Tunnel Syndrome

Newberry does not explain the manner in which the ALJ should have developed the record regarding his bilateral carpal tunnel syndrome.  He asserts only that no physician in the record evaluated his carpal tunnel syndrome or was even aware of the problem until he filed his second claim.

The record shows a carpal tunnel syndrome nerve study on January 20, 1993.  Tr. 245.[4] Both ALJ decisions specifically discussed this evidence and noted that the record showed that Newberry reported no functional limitations stemming from this impairment and had no difficulty using a bicycle, peeling potatoes or doing other activities which require adequate grip strength.  Tr. 25, 293.  Thus, the ALJ did evaluate Newberry's submission concerning his carpal tunnel syndrome and even allowed Newberry an opportunity to submit additional information after the hearing.  Tr. 322-23, 491.  Thus, no further development of the record in this regard would be productive.

### 3.    Breathing Impairments

Newberry asserts that the ALJ should have developed the record regarding his COPD, chronic bronchitis, emphysema, and asthma.

Newberry first asserts that DDS physicians refused to modify their earlier determinations

---

[4]  Newberry submitted a letter to the record asserting that this exhibit established that he had carpal tunnel surgery on an unspecified hand in 1994.  Tr. 322.  The neurological report makes no reference to any such surgery.  Tr. 245-47.

regarding respiratory impairments, citing a DDS evaluation and narrative completed on November 5, 2007. Tr. 459-67. This evidence does not establish that DDS refused to modify earlier decisions. Instead, the DDS findings addressed Newberry's COPD and noted little shortness of breath. Tr. 466-67.

Regarding his COPD, Newberry asserts that the ALJ improperly noted that he continued to smoke against medical advice. However, the Commissioner may cite the claimant's continued smoking as adversely impacting his credibility regarding COPD. *Bray*, 554 F3d at 1227. The ALJ therefore properly noted Newberry's continued smoking in discussing the development of Newberry's COPD symptoms.

Accordingly, the ALJ's finding in this regard is based upon proper legal standards.

### 4. <u>Mental Impairments</u>

Finally, Newberry asserts that the ALJ should have developed the record regarding an unspecified mental impairment. The ALJ found Newberry's mental impairments non-severe at step two (Tr. 291), and Newberry himself testified that his depression was "improved" at his remand hearing. Tr. 483. Newberry fails to explain what impairment he presently suffers, or how it allegedly impacts his ability to perform work activity. When a claimant fails to present a theory, "plausible or otherwise," as to how his impairments establish disability, the ALJ is not required to discuss the combined effects of a claimant's impairment or compare it to a specific listing at step three in the sequential proceeding. *Burch v. Barnhart*, 400 F3d 676, 683 (9th Cir 2005, citing *Lewis v. Apfel*, 236 F3d 503, 514 (9th Cir 2001). Newberry also fails to assert further limitations stemming from his alleged mental impairments at steps four and five in the sequential proceedings. For these reasons, Newberry fails to establish that the ALJ should have developed

the record regarding this unspecified mental impairment.

### C.    <u>Conclusion</u>

In summary, Newberry fails to establish that the ALJ should have further developed the medical record regarding his allegation of disability for the period after his December 15, 1999, alleged onset date and prior to July 17, 2008. Moreover, as a practical matter, further development of the medical record prior to July 17, 2008, would not be feasible since there is no reason to believe that any additional records exist or that the treating sources can provide any additional information for that time period.

## III.    <u>RFC Assessment</u>

Newberry finally asserts that the RFC assessment is not based upon the proper legal standards because it failed to include his limitations stemming from his hip fracture, carpal tunnel syndrome, asthma, and depression.

A claimant's RFC is the most he can do in spite of his impairment. 20 CFR §§ 404.1545(a), 416.945(a). In construing a claimant's RFC, the ALJ considers a claimant's medical record and symptom testimony, as well as statements by lay witnesses. 20 CFR §§ 404.1545(a)(3), 416.945(a)(3).

Notably, Newberry does not cite or explain specific work-related limitations improperly omitted by the ALJ. Furthermore, as discussed above, Newberry fails to show error in the ALJ's assessment of any specific impairments. Thus, the RFC assessment is based on appropriate legal standards and substantial evidence in the record.

///

///

## **ORDER**

For these reasons, the Commissioner's final decision is AFFIRMED.

Dated this 10th day of February 2011.


s/  Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

18 - OPINION AND ORDER